IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD CHILDS and DORIS CHILDS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-0242 |
| ) | Judge Trauger |
| HSBC MORTGAGE SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court are the defendant's Motion to Dismiss (Docket No. 5), to which the plaintiffs have filed a response (Docket No. 8) and in support of which the defendant has filed a reply (Docket No. 14), and the plaintiffs' Motion to Amend (Docket No. 9), to which the defendant has filed a response (Docket No. 15). For the reasons discussed below, the defendant's motion will be granted in part and denied in part, and the plaintiffs' motion will be granted.

## BACKGROUND

The defendant, HSBC Mortgage Services, Inc. ("HSBC"), held the mortgage to the house owned by the plaintiffs, Donald and Doris Childs.[1] In 2003, after becoming delinquent on the loan, the Childs declared bankruptcy. They paid approximately $59,000 to HSBC pursuant to a Chapter 13 plan.

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiffs' First Amended Complaint (Docket No. 9, Ex. 1).

1

The plaintiffs completed the bankruptcy process in February 2007, after which they once again became delinquent on the loan. The plaintiffs allege that, although they tendered payments to bring the loan current, HSBC refused the payments. Instead, HSBC allegedly "listed fees on their account statement which were false, inaccurate, misleading, and highly inflated." (Docket No. 9, Ex. 1 ¶ 8.)

The plaintiffs have attached a loan statement dated April 14, 2008 to their Complaint. It lists the following balances:

> Principal Balances: $129,037.18
> Unpaid/Deferred Interest: $31,833.85
> Advance: $24,948.99

(*Id.*, Ex. 1, Ex. 1.) The statement also lists a "total payment due" of $53,376.40, broken down as follows:

> Standard Payment: $1,551.25
> Past Due Amount: $44,660.41
> Unpaid Late Charges: $645.27
> Other Fees: $6,519.47

(*Id.*) The plaintiffs allege that the above figures "were not in accordance with the mortgage contract between [the parties]" and that "[t]he numbers listed did not account for the payments made by the Plaintiffs and represented false numbers." (*Id.*, Ex. 1 ¶ 8.)

Nevertheless, the plaintiffs allegedly "determined that the only action they could take to save their home was to pay off the mortgage with Defendant, HSBC, in the false, inflated amount." (*Id.* ¶ 11.) In April 2008, the plaintiffs' daughter obtained approval for a loan of $182,413.58, and she planned to use the money to pay off the plaintiffs' mortgage and buy the

2

house.[2]

But the next day, April 15, 2008, HSBC faxed a letter to the plaintiffs that listed a payoff amount of $202,854.83. This was itemized as follows:

> Total Unpaid Principal Balance: $129,037.18
> Total Interest Due:[3] $41,578.92
> Unpaid Late Charges: $645.27
> Unpaid Other Fees: $31,593.46

(*Id.*, Ex. 1, Ex. 2.) The plaintiffs allege that, once again, this payoff amount was "in excess of the contractual amount owed by the Plaintiffs" and "had no relation to the contract between the Plaintiffs and Defendant, HSBC." (*Id.*, Ex. 1 ¶ 13.) The plaintiffs' daughter was allegedly unable to secure a loan for the higher payoff amount listed in the April 15 letter. HSBC foreclosed on the plaintiffs' house and sold it to Beneficial Mortgage Corp. on July 23, 2008.

The plaintiffs initially filed suit in the Middle District of Tennessee in December 2008. (*See* Case No. 3:08-cv-01163, Docket No. 1.) They dismissed that case without prejudice in December 2009 (Case No. 3:08-cv-01163, Docket No. 21) and then filed an identical complaint in this action in March 2010. In response to the defendant's Motion to Dismiss, the plaintiffs have filed a Motion to Amend containing a proposed First Amended Complaint ("FAC")[4], which asserts claims for: (1) violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn.

---

[2] The plaintiffs do not explain how their daughter calculated this amount, but it appears that she added the "principal balance" of $129,037.18 to the "payment due" of $53,376.40.

[3] The letter notes that "[t]his amount may include deferred interest payments." (Docket No. 9, Ex. 1, Ex. 2.)

[4] The FAC contains several sentences of allegations that were not in the original Complaint. More importantly, the plaintiffs have attached the April 15 letter as an exhibit to the FAC.

3

Code Ann. 47-18-104 *et seq.*; (2) intentional misrepresentation; (3) wrongful foreclosure; and (4) intentional infliction of emotional distress.

## ANALYSIS

The defendant has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs have not pleaded sufficient factual content to support their claims. The court will grant the plaintiffs' Motion to Amend and will examine the defendant's arguments as they apply to the FAC.[5]

**I.      Motion to Dismiss Standard**

The Federal Rules of Civil Procedure require plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The court must assume that all of the factual allegations are true, even if they are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In contrast, legal conclusions are not entitled to the assumption of

---

[5] The defendant argues that it should be allowed to re-file its Motion to Dismiss so "that it be afforded an opportunity to fully address the Amended Complaint." (Docket No. 15 at 1.) But after the plaintiffs filed their Motion to Amend, the defendant sought leave to file a reply brief in support of its Motion to Dismiss specifically so that it could have "a full and fair opportunity to respond to the latest accusation from Plaintiffs." (Docket No. 10 at 2.) The reply brief does, in fact, address the FAC. (*See* Docket No. 14 at 2-4.) Because the defendant has already received a "full and fair opportunity" to address the relatively minor changes in the FAC, there is no need for it to file a new Motion to Dismiss.

4

truth. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555, 556 n.3. In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

A higher pleading standard applies to claims of fraud. When alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires allegations about "the time, place, and content of the alleged misrepresentation . . . ; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (citation omitted). Rule 9(b), however, "should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *Id.* at 503. The key consideration is whether the complaint gives the defendant fair notice of the fraud claim and enables the defendant to prepare a responsive pleading. *Id.* at 504.

## II.     Tennessee Consumer Protection Act Claim

The defendant argues that the plaintiffs have not pleaded enough factual detail to support

5

Case 3:10-cv-00242   Document 16   Filed 08/03/10   Page 5 of 12 PageID #: 85

their claim under the Tennessee Consumer Protection Act. (Docket No. 6 at 3-4.)

To recover under the TCPA, a plaintiff must show: (1) "that the defendant engaged in an unfair or deceptive act or practice"; and (2) that the defendant's conduct caused an ascertainable loss of money or property. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 47-18-109(a)(1)). "[W]hether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact." *Id.* at 116.

Importantly, "[c]laims under the TCPA are not limited to misrepresentations that are fraudulent or willful." *Id.* at 115. The *Tucker* court elaborated:

> The concept of deceptiveness is a broader, more flexible standard of actionable merchant misconduct than the traditional remedy of common-law fraud. A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact. Thus, for the purposes of the TCPA . . . , the essence of deception is misleading consumers by a merchant's statements, silence, or actions.

*Id.* at 116 (footnote omitted).

The defendant claims that the plaintiffs have not explained what acts they consider unfair or deceptive. (Docket No. 6 at 4.) But the main thrust of the plaintiffs' TCPA claim is that the defendant issued a loan statement and a payoff letter containing incorrect, inflated figures. It seems clear that, if the plaintiffs can show that HSBC issued documents with inflated balances, a jury might find that this conduct "tend[ed] to mislead" the plaintiffs as to the balance of the loan, making it "deceptive" under the TCPA. *See Tucker*, 180 S.W.3d at 116.

The plaintiffs, however, have not actually pleaded enough facts to support a claim that the April 14, 2008 loan statement was deceptive. The FAC merely alleges, in conclusory

6

fashion, that the figures were "false, inaccurate, misleading, and highly inflated." (Docket No. 9, Ex. 1 ¶ 8.) The plaintiffs also make conclusory allegations that the statement's figures "did not account for [previous] payments made by the Plaintiffs" and "were not in accordance with the mortgage contract between [the parties]." (*Id.*)

These threadbare assertions are not enough to support a claim. The plaintiffs' allegations do not explain what provisions of the mortgage contract were violated, and they do not explain why the fees assessed on the admittedly delinquent account were improper. *Cf., e.g.*, *Flex Homes, Inc. v. Ritz-Craft Corp of Mich.*, No. 07cv1005, 2010 U.S. Dist. LEXIS 60422, at *16-17 (N.D. Ohio June 18, 2010) ("[T]he Plaintiffs' argument is reduced to the contention that asserting a generic breach of contract claim is sufficient to survive a motion to dismiss without any factual allegations relating to the particular contract at issue . . . . This is a patent misinterpretation of the Rule 12(b)(6) standard, particularly in the aftermath of . . . *Twombly* and *Iqbal* . . . ."). Although the plaintiffs do vaguely allege that, at some point, HSBC rejected certain delinquent payments, they do not allege any relevant details, such as the amount of the payments, the date that they were rejected, or why HSBC was required to accept them. The FAC also lacks any allegations regarding the proper balance of the loan.

In sum, the plaintiffs' allegations regarding the April 14 statement are the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are insufficient to support a claim. *See Iqbal*, 129 S. Ct. at 1949. There is simply not enough "factual content" to "allow[] the court to draw the reasonable inference that" HSBC misstated the loan figures in the statement or improperly rejected payments from the plaintiffs. *See id.*

7

It is plausible, however, that the April 15, 2008 payoff letter contained incorrect figures, because there are facial discrepancies between the April 14 statement and the April 15 letter. The sum of the "principal balances," "unpaid/deferred interest," "advance," "unpaid late charges," and "other fees" figures listed in the April 14 statement is $192,984.76. This is approximately $10,000 less than the total payoff amount listed in the April 15 letter. Notably, the April 14 statement lists a balance of $31,833.85 in "unpaid/deferred interest," while the April 15 letter lists $41,578.92 in "total interest due."

There may, of course, be a legitimate explanation for the differing figures, but these discrepancies at least create a reasonable inference that the April 15 letter was incorrect. In that case, the amounts contained in the letter may have been deceptive, and they may support a claim under the TCPA. Accordingly, the court will not dismiss the plaintiffs' TCPA claim.

### III. Fraud Claim

Next, the defendant argues that the plaintiffs have failed to sufficiently plead their fraud claim (Docket No. 6 at 5-8), which the plaintiffs have styled as an "intentional misrepresentation" claim. The fraud claim involves only the representations contained in the April 14 statement, and not the representations in the April 15 letter. (*See* Docket No. 9, Ex 1 ¶ 24 (alleging that the defendant "intentionally stated false charges on their monthly statements including, but not limited to, the April 14, 2008 statement.").)

A plaintiff claiming fraud must show that:

> 1) the defendant made a representation of an existing or past fact;
> 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly;
8

> 5) plaintiff reasonably relied on the misrepresented material fact;
> and 6) plaintiff suffered damage as a result of the
> misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). As mentioned above, Federal Rule of Civil Procedure 9(b) requires a complaint to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), which means that the complaint must contain specific allegations regarding "'the time, place, and content of the alleged misrepresentation.'" *SNAPP*, 532 F.3d at 504 (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 504 (6th Cir. 2007)). It must also contain specific allegations "explain[ing] why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quotation marks omitted).

First, the defendant argues that the plaintiffs have failed to plead with specificity in what way the figures given in the April 14 statement were false. (Docket No. 6 at 7.) For the reasons discussed in the previous section, the defendant is correct. This alone justifies dismissing the claim.

Second, the defendant argues that the plaintiffs have failed to plead that they reasonably relied on the documents. (Docket No. 6 at 7-8.) "Conclusory statements of reliance are not sufficient to explain with particularity how [the plaintiff] detrimentally relied on the alleged fraud . . . ." *Evans v. Pearson Enters.*, 434 F.3d 839, 852-53 (6th Cir. 2006). In the FAC, the plaintiffs "aver that they had to rely upon the[] false charges [listed in the April 14 statement] in attempting to retain their family home." (Docket No. 9, Ex. 1 ¶ 25.) In their brief, they argue:

> The reasonableness of the Plaintiffs' reliance is not at issue
> because the Plaintiffs had no choice but to rely on the amount.

9

> They did not have the ability to pay off the inflated amount . . .
> and, therefore, the reliance was the only choice they had. They
> could not pay it off.

(Docket No. 8 at 6.) This argument misapprehends what "reliance" means in the context of a fraud claim.

If a plaintiff knows that the defendant's representation is false, he or she cannot reasonably rely on it. "Fraud involves an element of deception, and 'if one knows the truth, and is not deceived, he is not defrauded.'" *Hutter v. Bray*, No. E2001-02408-COA-R3-CV, 2002 Tenn. App. LEXIS 392, at *7 (Tenn. Ct. App. June 5, 2002) (quoting *Freeman v. Citizens' Nat'l Bank*, 70 S.W.2d 25, 29 (Tenn. 1934)); *see also Graham v. First Am. Nat'l Bank*, 594 S.W.2d 723, 725-26 (Tenn. Ct. App. 1979) (noting that, to support a fraud claim, "'the person to whom the representation has been made'" must "'believ[e] it to be true'" (quoting *John Wynne & Co. v. Allen*, 66 Tenn. 312, 317 (Tenn. 1874))).

Here, the FAC strongly suggests that the plaintiffs did not believe that the payoff amount was correct. (*See* Docket No. 9, Ex. 1 ¶ 11 ("The Plaintiffs . . . determined that the only action they could take to save their home was to pay off the mortgage with Defendant, HSBC, in the false, inflated amount.").) Nothing in the complaint indicates that the plaintiffs ever thought that the amounts listed in the April 14 statement were anything other than inflated. Indeed, they must have been aware that the defendant had previously rejected their delinquent payments.

Because the FAC does not sufficiently allege that the April 14 statement was false or that the plaintiffs reasonably relied on the statement, the court will dismiss the plaintiffs' fraud claim.

## IV.     Intentional Infliction of Emotional Distress Claim

The defendant further argues that the plaintiffs have not sufficiently pleaded their intentional infliction of emotional distress claim. (Docket No. 6 at 10-12.)

For a plaintiff to recover for intentional infliction of emotional distress, "(1) the conduct complained of must be intentional or reckless, (2) it must be so outrageous that it is not tolerated by a civilized society, and (3) it must result in serious mental injury." *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000) (citing *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997)). Not all tortious or criminal conduct is outrageous. *See Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993). Instead, the plaintiff faces the "exacting" burden of showing conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

The plaintiffs have not alleged facts sufficient to show outrageous conduct by HSBC. The plaintiffs argue that it was emotionally damaging for them to lose their house and that it was outrageous for the defendant to "essentially rob them of their home." (Docket No. 8 at 7.) Undoubtedly, it is difficult and upsetting to lose a home through foreclosure. But, at most, the allegations show that HSBC incorrectly added approximately $10,000 of interest to the payoff amount in the April 15 letter, then foreclosed on the plaintiffs' delinquent account. Nothing indicates that the plaintiffs ever disputed the payoff amount or brought it to HSBC's attention.

Even if HSBC's actions were otherwise tortious, they do not rise to the level of outrageous. *Cf. Nelson v. Ford Motor Credit Co.*, 621 S.W.2d 573, 576 (Tenn. Ct. App. 1981)

11

(finding that the defendant's credit collection practices, undertaken because the plaintiff's account was erroneously flagged as delinquent, were not outrageous because they were not threatening or abusive).  Thus, the court will dismiss the plaintiffs' claim for intentional infliction of emotional distress.

## V.     Wrongful Foreclosure Claim

Finally, the defendant argues that the plaintiffs' wrongful foreclosure claim, which was originally styled as a conversion claim, should be dismissed because it is not supported by sufficient factual allegations.  (Docket No. 6 at 9-10; Docket No. 14 at 3.)  But, as explained above, there is enough in the FAC to support a claim that the April 15 letter contained an incorrect payoff amount.  Accordingly, the court will not dismiss this claim.

## CONCLUSION

For all of the reasons discussed above, the plaintiffs' Motion to Amend will be granted, and defendant's Motion to Dismiss will be granted in part and denied in part.  The fraud and intentional infliction of emotional distress claims will be dismissed from the FAC.  Because the plaintiffs have already had one chance to amend their Complaint in response to the defendant's Motion to Dismiss, the court will dismiss the claims with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

12